Matthew L. Morris, CA State Bar No. 296656
The Morris Law Practice, Inc.
21650 Oxnard Street Ste. 1910
Woodland Hills, CA 91367
Telephone: (818) 423-9287
Facsimile: (818) 465-2773
Emails: MMorris@MorrisJustice.com
Attorney for Plaintiff, IMRAN KHAN

# UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMRAN KHAN, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL R. "HARRY-O" HARRIS; HARRY-O-PRODUCTIONS, LLC PAUL NUTALL; TIFFANY NUTALL; OMAR SHAKUR; 2ND CHANCE  TV SHOWS & PRODUCTIONS, INC.; 2NDCHANCE ORGANIZATION; PAUL NUTALL, 2NDCHANCE FGA; PAUL K NUTALL 2NDCHANCE; and DOES 1-10, all of whose true names are unknown, INCLUSIVE, <br><br> Defendants. | DOCKET NO.:   2:23-cv-01768 <br><br> CIVIL ACTION <br> **VERIFIED COMPLAINT FOR VIOLATIONS OF:** <br><br> (1) **BREACH OF CONTRACT;** <br> (2) **UNJUST ENRICHMENT;** <br> (3) **CONVERSION;** <br> (4) **FRAUDULENT INDUCEMENT** <br><br> **[JURY TRIAL DEMANDED]** |

In September of 2016 Omar Shakur (Defendant), met Michael Harris (Defendant), as a visitor at Federal Correctional Institution, Lompoc. The introduction included a list of Omar Shakur's qualifications and resources and spoke about projects as well, such as Ray Carouth's story and Street Executives. Among those resources and qualifications were his ability to raise funding and to start and run a business. Michael Harris went into partnership with Paul Nutall and 2nd Chance program organization ("Organization"). The plan was to establish an Organization to give Michael Harris a favorable resume to seek early release. The Organization's purpose was to create a series of Television episodes, beginning with initial pilots focusing on Michael Harris. In April of 2020 Michael Harris submitted the show to assist in his compassionate release motion, The Honorable Judge Terry Hatter stated that he believed it was a scam and the series did not have enough people to show that the project was sustainable. Paul Nutall's 2nd Chance Organization was made up of partners Paul K. Nutall, his wife Tiffany Nutall, Michael Harris, and Omar Shakur.

When it was time to form the Organization, Omar Shakur was selected to be a part of the Organization because of his unique ability to obtain funding, and ability to start and run an organization. Omar Shakur reached out to Plaintiff, Imran Khan, to assist with funding. 2ndChance Organization, through Omar Shakur, communicated the business purpose, vision, and plan for the loan. Mr. Khan understood that the loan was the creation of an episodic television program. The plan was to leverage the show to illustrate the change in Mr. Harris. It later developed into a more expanded show covering individuals other than Mr. Harris, due to Judge Hatter's critique. The vision for the expanded version was to sell it to a major network. Mr. Khan was informed by 2nd Chance Organization, through the Chief Financial Officer, Omar Shakur, that by selling the show, Mr. Khan would receive a return on his loan and that there was already a contract with Sinclair

Broadcast Group.  Additionally, Michael Harris was backing the loan and would pay Two Million Dollars ($2,000,000) upon his release, and if not released from prison, Mr. Harris would direct his team to make the payment of the Two Million Dollars ($2,000,000).

Plaintiff Imran Khan was the sole funding for the project and has received absolutely nothing in return, despite the numerous promises and representations to the contrary. Imran Khan gave 2ndChance the following:

- One Hundred and Twenty-Five Thousand Dollars ($125,000) on December 1, 2019;

- On February 1, 2020, Imran Khan gave 2ndChance Twenty Thousand Dollars ($20,000);

- On February 3, 2020, Imran Khan gave 2ndChance One Hundred Eighty Thousand Dollars ($180,000);

- On March 1, 2020, Imran Khan gave 2ndChance Ten Thousand Dollars $10,000;

- On April 1, 2020, Imran Khan gave 2ndChance Thirty Thousand Dollars ($30,000);

- On June 1, 2020, Imran Khan gave 2ndChance One Hundred Forty Thousand Dollars ($140,000);

- On June 22, 2020, Imran Khan gave 2ndChance One Hundred Twenty-Six Thousand Dollars ($126,000);

- On July 22, 2020, Imran Kahan gave 2ndChance Sixty Thousand Dollars ($60,000);

- On January 12, 2021, Imran Khan gave 2ndChance Fifty Thousand Dollars ($50,000);

- On January 22, 2021, Imran Khan gave 2ndChance Five Thousand Dollars ($5,000);

- On January 25, 2021, Imran Khan gave 2ndChance Forty Thousand Dollars ($40,000);

- On February 9, 2021, Imran Khan gave 2ndChance Ten Thousand Dollars ($10,000);

- On February 10, 2021, Imran Khan gave 2ndChance Five Thousand Dollars ($5,000);

- On February 12, 2021, Imran Khan gave 2ndChance Eleven Thousand Dollars ($11,000) and

- On February 22, 2021, Imran Khan gave 2ndChance Twenty-Five Thousand Dollars ($25,000).

During the process of the financial support for 2ndChance Organization, Imran Khan entered into several agreements, detailing promises to pay, financial return and intellectual property interest. On February 1, 2020, Imran Khan, Omar Shakur and Paul Nutall entered into a notarized funding agreement in which the money that was being loaned was to be returned with interest no less than 10% increase. On June 30, 2020, Paul Nutall entered a Promise to Pay note that stated that One Million Three Hundred Forty-Eight Thousand Dollars ($1,348,000.00) with a repayment date no later than March 1, 2021. The Promise to Pay had a grace period and compound penalty of 20% applied to every month it was not paid in full. This addendum was created for a meeting of the minds. On January 10, 2021, Paul Nutall and Imran Khan signed a Memorandum of Understanding and Promise to Pay that promised to pay Imran Khan Four Million Dollars ($4,000,000) of a Five Million Dollar ($5,000,000) advance 2ndChance Organization was set to receive from Fox. In addition, the Memorandum of Understanding also states that all property rights in the production shall become a non-revocable collateral and ownership to Imran Khan with a 30-day cure period.

Imran Khan has made several attempts to retrieve money from Paul Nutall and was met with nothing but excuses. Even prior to filing, Plaintiff presented this

suit and requested the money he was legally entitled to, gave notice to all Defendants of his request, and waited a reasonable time for a response or offer to settle. To date, Defendants have made no attempt to settle their legal debts.

## I.   <u>NATURE OF THE ACTION</u>

1.      Plaintiff Imran Khan ("Plaintiff") allege that Defendants 2ndChance TV Show and Productions, Inc. ("2ndChance"), Michael Harris, Paul Nutall, Tiffany Nutall, Omar Shakur, and John (or Jane) Does 1-10, all of whose true names are unknown (collectively, "Defendants"), failed to deliver their contractual promises, unlawfully withheld Plaintiff's money and misappropriated funds sent to their organization.

2.      Plaintiff further allege that Defendants conspired to defraud Plaintiff out of over One Million Dollars ($1,000,000).

3.      Plaintiff seeks compensatory damages, punitive damages, and reasonable attorneys' fees and costs as remedies for Defendants' violations of their rights and unjust enrichment.

## II.   <u>THE PARTIES</u>

4.      Plaintiff Imran Khan is a lender.

5.      Upon information and belief, Defendant Paul Nutall is a television producer, and chief executive officer of 2ndChance Organization, and founder of 2ndChance Non-Profit.

6.      Upon information and belief, Defendant, Omar Shakur is a television producer, and chief financial officer of 2ndChance Organization.

7.      At all times relevant 2ndChance Organization utilized Omar Shakur their Chief Financial Officer, to request money from his acquaintance Imran Khan.

8.      Upon information and belief, Defendant, Tiffany Nutall is a television

producer.

9.     Upon information and belief, Defendant, Michael Harris, is an Entertainment Mogul, and prisoner seeking release through the production of the 2ndChance project.

10.     Upon information and belief, Defendant, 2ndChance TV Show and Productions, Inc. is a California Organization, registered address of 8718 Sarasota Woods, San Antonio, Texas 78250.

11.     Upon information and belief, Defendant, Paul K Nutall 2ndChance (Non-Profit), having the registered address of 5208 North 10th Street, McAllen, Texas, 78504-2701.

12.     Imran Khan gave money to Defendants, or for the benefit of Defendants from the 2019 to 2021.

13.     Defendants failed to deliver on contractual agreements to pay.

14.     Defendants began to distance themselves from fellow Defendant Omar Shakur when Sinclair Broadcast Group/Fox began nearing depositing an advance.

15.     Plaintiff is informed and believes and thereon always alleges that relevant herein, each of the Defendant Does 1-10 were responsible in some manner for the occurrences and injuries alleged in this Complaint. Their names and capacities are currently unknown to Plaintiff. Plaintiff will amend this Complaint to show such true names and capacities when the same have been ascertained.

### III.    JURISDICTION AND VENUE

16.     This Court has diversity subject matter jurisdiction and supplemental subject matter jurisdiction over the claims in this suit pursuant to 28 U.S.C. §§ 1332 (a)(2) and 1367 (a). Plaintiff is a California resident, Defendants are Texas residents, a Texas Non-profit, California Corporations and California residents, and the amount in controversy exceeds $75,000 exclusive of interests and costs.

17.    Venue is proper in, and Defendants are subject to the personal jurisdiction of, this Court pursuant to 28 U.S.C. § 1391 (b) (1).

## IV.    FACTUAL ALLEGATIONS

18.    On or about April 17, 2019, Paul Nutall, Tiffany Nutall, and Michael R. Harris signed a partnership agreement for a joint venture titled 2ndChance Organization.

19.    Paul Nutall alleges that on October 1, 2019, he entered into a contract with Sinclair Broadcast Group, Inc. Paul Nutall would present the alleged contract substantiating the belief that the deal was completed.

20.    In or around November of 2019, 2ndChance TV Show & Production, Inc. through its Chief Financial Officer, Omar Shakur, contacted Imran Khan about an opportunity to loan to a television project that would assist Michael Harris get out of federal prison. The initial loan would only need to be Two Hundred Thousand Dollars ($200,000) to Three Hundred Thousand Dollars ($300,000) and that Michael Harris was backing the project upward of Two Million Dollars ($2,000,000), so he would have a great return on his loan.

21.    Michael Harris, Paul Nutall and Tiffany Nutall remained in constant communication and conspired together to receive the money for their personal benefit and had no intention of ever giving any money to Imran Khan.

22.    In addition to the Michael Harris guarantee, 2ndChance TV Show & Production, Inc. represented that it had a contract with Sinclair to broadcast twenty to twenty-four TV shows using Fox and its affiliate TV channels, from July 2020 to July 2021. Imran Khan was told that 2ndChance TV Show & Productions will own 4 minutes barter per telecast as its sole property to potentially generate Eighteen Million Nine Hundred Thousand Dollars ($18,900,000) gross revenue, resulting in Nine Million Four Hundred Thousand Dollars ($9,400,000) in profit, coupled with an option to produce more shows in 2021.

23.     It later came to Imran Khan's attention that Paul Nutall did not even have a bank account for the 2ndChance Organization and was utilizing the non-profit organization's bank account. This was a fraudulent misappropriation of funds.

24.     Imran Khan paid the initial One Hundred Twenty-Five Thousand Dollars ($125,000) to 2ndChance December 1, 2019.

25.     On February 1, 2020, Imran Khan, Omar Shakur, and Paul Nutall executed a funding agreement [Exhibit 1].

26.     By February 3, 2020, Imran Khan paid an additional Two Hundred Thousand Dollars ($200,000), one payment of Twenty Thousand Dollars ($20,000) on the 1st and the remaining One Hundred Eight Thousand Dollars ($180,000) on the 3rd of February.

27.     In March and April 2ndChance TV Show & Productions, Inc. requested additional funding to go toward the project. Imran Khan complied with the request and sent additional money; specifically, Ten Thousand Dollars ($10,000) on March 1, 2020, and Thirty Thousand Dollars ($30,000) on April 1, 2020. The parties considered these payments the "2nd Funding."

28.     The "3rd Funding" round was scheduled to be One Hundred Fifty Thousand Dollars ($150,000), however in June Imran made a payment of One Hundred Forty Thousand Dollars ($140,000) to 2ndChance Television & Production, Inc. on June 1, 2020, and an additional payment of One Hundred Twenty-Six Thousand Dollars ($126,000) on June 22, 2020.

29.     On or about July 22, 2020, Imran Khan completed the "4th funding" round by completing a payment of Sixty Thousand Dollars ($60,000) made to 2ndChance TV Show & Productions, Inc.

30.     On July 30, 2020, Paul Nutall, on behalf of 2ndChance TV Show and Productions, Inc. presented Imran Khan with a Promise to Pay. This Promise to Pay promised to pay Imran Khan the amount of One Million Three Hundred Forty-Eight

Thousand Dollars ($1,348,000) with a repayment date no later than March 1, 2021 [Exhibit 2].

31.    On or about January 10, 2021, Paul Nutall submitted to Imran Khan another Promise to Pay agreement that outlines the Sinclair Broadcasting Television details. The Promise to Pay represents that 2ndChance T.V. Show & Production, Inc. and Imran Khan agree to an 80/20 split of the Five Million Dollar ($5,000,000) advance that was expected from Sinclair Broadcast Group shortly after the signing. Specifically, Imran Khan was to receive 80 %, (Four Million Dollars ($4,000,000)) and 2ndChance T.V. Show & Production was to receive 20% (One Million Dollars ($1,000,000). The Promise to Pay additionally stated that if 2ndChance T.V. Show & Productions, Inc. failed to pay back the loan on its due date and/or profit share on its due date; all property rights and 2ndChance guarantors become non-revocable collateral and ownership of [Imran Khan] [ Exhibit 3].

32.    On or about January 12, 2021, Imran Khan paid 2ndChance Fifty Thousand Dollars ($50,000) for the project.

33.    On or about January 22, 2021, Imran Khan paid 2ndChance Five Thousand Dollars ($5,000) for the project.

34.    On or about January 25, 2021, Imran Khan paid 2ndChance Forty Thousand Dollars ($40,000) for the project.

35.    On or about February 9, 2021, Imran Khan paid 2ndChance Ten Thousand Dollars ($10,000) for the project.

36.    On or about February10, 2021, Imran Khan paid 2ndChance Five Thousand Dollars ($5,000) for the project.

37.    On or about February 12, 2021, Imran Khan paid 2ndChance Eleven Thousand Dollars ($11,000) for the project.

38.    On or about February 22, 2021, Imran Khan paid 2ndChance Twenty Thousand Dollars ($25,000) for the project.

39.     2ndChance did not meet any of its promised commitments to pay, nor did it pay back the money sent.

40.     On or about June 12, 2021, Imran Khan, through his legal counsel, made a demand for payment of the money he was entitled to under the January 10, 2021, promise to pay agreement. [Exhibit 4]

41.     From that date, Paul Nutall made several excuses as to why the money had not been transferred. Initially, Paul Nutall stated that the money was on its way, but there was an issue with the non-profit account in which Sinclair was going to send it to. Later, Paul Nutall shifted the blame to Omar Shakur but never once did Paul Nutall initiate a payment of the money due. Imran Khan became aware that Paul Nutall and his wife Tiffany Nutall had misappropriated the funds to buy homes and live a luxurious lifestyle they could not afford with the money that Imran Khan had sent.

42.     Additionally, several attempts were made to reach out to Michael Harris upon his release from prison to collect from the Two Million Dollars ($2,00,000) guarantee supporting the project. The 2ndChance Program was the catalyst of his pardon, material that was used to justify his presidential pardon.

43.     Finally, prior to the filing of this lawsuit, Imran Khan, through his attorney, made an offer to settle the matter to all Defendants and no payment was ever transferred.

## V.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Breach of Contract Under California Law-Against 2ndChance Television & Productions, Inc.)**

44.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 43, above.

COMPLAINT AND DEMAND FOR JURY TRIAL

45.     On February 1, 2020, Imran Khan accepted 2ndChance Television & Productions, Inc's offer for shares and buy back per the terms of the funding agreement. Imran Khan paid the requested purchase price at the value requested per the terms. The agreement called for a buyback of all shares at 10% increase of purchase price or .05% of the Net profits from the 2ndChance TV Show per share, whichever is greater.

46.     Imran Khan performed his obligations under the first funding agreement. 2ndChance TV Show & Productions, Inc. did not.

47.     On or about July 30, 2020, Imran Khan accepted 2ndChance TV Show & Productions, Inc.'s Promise to Pay. The Promise to Pay detailed a list of payments that Imran Khan had already completed and the 2ndChance TV Show & Productions, Inc.'s commitment to pay Imran Khan the amount of One Million Thirty Eight Thousand Dollars ($1,348,000.00) through advertising revenue or other "revenue/fund sources" whichever is earlier, with a repayment due no later than March 1, 2021. Defendant did not meet this commitment.

48.     On or about January 10, 2021, Imran Khan accepted 2ndChance TV Show & Productions, Inc.'s Promise to Pay offer expressed in writing by Agreement. The Agreement stated in pertinent part that 2ndChance T.V. Show & Productions, Inc. would split 80/20 the Five Million Dollar ($5,000,000) advance coming from the Sinclair Broadcast Group deal, with 80% of the advance going to Imran Khan. The Agreement also stated that all property rights and 2ndChance guarantors become non-revocable collateral and ownership of Imran Khan.

49.     Imran Khan fulfilled all of his obligations under the agreement. However, 2ndChance T.V. Show & Productions, Inc. did not make any payment to Imran Khan and never turned over any property from the production.

50.     As described above Defendants failed to fulfill their commitment per any of the Agreements they signed with Mr. Imran Khan by, among other things:

---

COMPLAINT AND DEMAND FOR JURY TRIAL

a.   Failing to pay prescribed payments by deadline;

b.   Failing to pay prescribed money;

c.   Failing to deliver property rights in the production after 30-day cure period;

51.   As a direct, legal, and proximate result of Defendants' failure to pay, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

52.   Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' rights under contract.

53.   Plaintiff is entitled to reasonable attorneys' fees and costs of suit.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment Under California Common Law-Against Michael Harris)

54.   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 53, above.

55.   As described in detail above, Michael Harris recruited the loan for his project to support his release from prison. Michael Harris guaranteed to back the project with Two Million Dollars ($2,000,000), this guarantee was one of the reasons Imran Khan agreed to provide the loan.

56.   Michael Harris joined a joint venture with 2ndChance and became an owner in the Organization. This Organization then contracted with Imran Khan to fund the project needed for Michael Harris's release.

57.   Plaintiff Imran Khan provided over Eight Hundred Thousand Dollars ($800,000) towards the project.

58.   The 2ndChance project was utilized to facilitate Michael Harris's Presidential pardon from Prison.

---

COMPLAINT AND DEMAND FOR JURY TRIAL

59.    Defendant Michael Harris got all the benefit of the deal with no cost to him and is also a partner within 2ndChance, the Organization that got all the financial benefit and never turned over the intellectual property.

60.    Defendant Michael Harris's unjust retention of the payments, retention of property rights to the production, and utilization of the show for his personal benefit, requires restitution.

## THIRD CLAIM FOR RELIEF
### (Conversion Under California Common Law- Against Paul & Tiffany Nutall)

61.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 60, above.

62.    As articulated in *Burlesci v. Petersen* 68 Cal.App.4th 1062 (Cal. Ct. App. 1998), under California law, the elements required to prove a claim of conversion are (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages.

63.    As described in detail above, Imran Khan, made over Eight Hundred Thousand Dollars ($800,000) in payments over about a 16-month period to 2ndChance.

64.    The money loaned by Plaintiff, Imran Khan, was in Plaintiff, Imran Khan's rightful possession before Imran Khan loaned it in 2ndChance.

65.    Defendant misappropriated a lot of the money sent for personal use, including purchasing of a home and maintaining a lavish lifestyle they could not afford.

66.    Imran Khan demanded the return of the payments on multiple occasions, both in writing and by other means.

67.    Paul Nutall and Tiffany Nutall made up so many excuses and delays for

---

COMPLAINT AND DEMAND FOR JURY TRIAL

sending the money and to date has not sent the money.

68.    Paul Nutall and Tiffany Nutall have wrongfully retained and refused to return the Eight Hundred Sixty-Two Dollars ($862,000.00) payments made by Plaintff Imran Khan.

69.    As a direct, legal and proximate result of the conversion, Plaintiff Imran Khan has sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, Plaintiff has suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for conversion at trial but no less than Eight Hundred Sixty-Two Dollars ($862,000).

70.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from theft.

71.    Plaintiff is entitled to reasonable attorneys' fees and costs of suit.

## FOURTH CLAIM FOR RELIEF
**(Fraudulent Inducement Under California Common Law- Against Paul Nutall)**

72.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 71, above.

73.    The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; and (e) resulting damage.

74.    As described above, Paul Nutall deliberately misrepresented many material facts, those facts include but are not limited to:

    a.    2ndChance was a legitimate business, with a bank account and good standing with the Secretary of State of Texas. In fact, Paul

---

COMPLAINT AND DEMAND FOR JURY TRIAL

Nutall was depositing some of the initial money into a non-profit organization. Additionally, Paul Nutall falsely represented that it had a deal secured with Sinclair Broadcast Group, Inc. Paul Nutall represented that he was going to use the money for legitimate business practices.

75.    Paul Nutall's false representations of material facts that were intended to induce Plaintiff Imran Khan into relying on those false representations in paying 2ndChance.

76.    As described above, when Paul Nutall made these representations, he knew them to be false.

77.    As described above, Mr. Paul Nutall made these representations to induce Plaintiff Imran Khan to make payment to 2ndChance.

78.    Based on the contract produced that appeared to be with Sinclair Broadcasting Group, Inc., the plan drawn up for use of the funds and the relationship they had with Michael Harris an accomplished figure in the entertainment industry, Imran Khan was justified in relying on these representations by Paul Nutall in a TV production project for the benefit of Michael Harris that there would be a return on the loan.

79.    As described above, Imran Khan relied on the representations made by Paul Nutall, to the detriment of Imran Khan, Imran paid over Eight Hundred Thousand Dollars ($800,000) as he was encouraged and directed to do by Paul Nutall, and Paul Nutall never returned the money paid by Imran Khan.

80.    As a direct, legal, and proximate result of Defendants' retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

81.    Plaintiff is entitled to reasonable attorneys' fees and costs of suit.

/ / /

---

1

2

3

4

## FIFTH CLAIM FOR RELIEF
**(Piercing Corporate Veil/ Personal Liability of Owners/ "Alter Ego" Under California Law- Paul Nutall, Tiffany Nutall, Michael Harris, Omar Shakur)**

5

6

82.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 81, above.

7

8

83.     As delineated in *Automotriz del Golfo de California v. Resnick* 47 Cal.2d 792 (Cal. 1957) one must find "Unity of Interest" and "Inequitable Result."

9

10

11

12

13

14

15

16

17

18

84.     As described in detail above, funds that were supposed to be deposited in the business account for the entity were deposited into a non-profit account and then subsequently used for personal gain of shareholders rather than the purpose contracted for. The shareholders conspired together to defraud Imran Khan. Michael Harris was in constant communication with Paul and Tiffany Nutall about what they had planned. No funding was returned to Imran Khan despite the personal benefit that was achieved by the shareholders. Shareholders have now left the business entity without money, allowing them to hide behind the veil of the corporation would sanction a fraud and promote an injustice.

19

20

21

22

23

24

85.     As a direct, legal and proximate result of the discrimination, Plaintiff have sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, Plaintiff has suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available including prejudgment interest, attorneys' fees and costs.

25

26

## **PRAYER FOR RELIEF**

27

WHEREFORE, Plaintiff prays for relief as follows:

28

1.     For Expectation Damages of Four Million Dollars ($4,000,000);

---

2.      For compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

3.      Restitution;

4.      For punitive damages in an amount to be determined at trial;

5.      For interest on money not repaid by deadline, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

6.      For reasonable attorneys' fees and costs and

7.      For such other and further relief as this Court deems just and proper.

Dated:  February 28, 2023                         Respectfully submitted,
                                                  Matthew Morris, Esq.
                                                  THE MORRIS LAW PRACTICE, INC.


                                      By: _____
                                                  MATTHEW L. MORRIS

                                            Attorney for Plaintiff


### DEMAND FOR JURY TRIAL

        Plaintiffs demand a jury trial on all causes of action and claims to which they have a right to a jury trial.

Dated:  February 28, 2023                         Respectfully submitted,
                                                  Matthew L. Morris, Esq.
                                                  THE MORRIS LAW PRACTICE, INC.


                                      By: _____
                                                  MATTHEW L. MORRIS

---

COMPLAINT AND DEMAND FOR JURY TRIAL

## VERIFICATION OF COMPLAINT

State of ___California___

County of ___Los Angeles_____, to wit:


___Imran Khan_____, the Complainant named in the foregoing Complaint being duly sworn, says that the facts and allegations contained therein are true, except so far as they are therein stated to be on information, and that, so far as they are therein stated to be on information, she/he believes them to be true.



_____

Complainant (signature)


Taken, sworn to and subscribed before me this __3rd__ day of __March__, __2023__ .

Doc ID: 499473767a9430c789070925ae9c06d2ec10ff61

# EXHIBIT 1

## TEXAS ORDINARY CERTIFICATE OF ACKNOWLEDGMENT
Civil Practice & Remedies Code § 121.007

The State of Texas

County of _Bexar_

Before me,

_Carlos Ponce, Notary Public_

Name and Character of Notarizing Officer,
e.g., "John Smith, Notary Public"

on this day personally appeared

_Paul K. Nutall_

Name of Signer

☐ known to me

☐ proved to me on the oath of

_____

Name of Credible Witness

☑ proved to me through _Texas_

_I.D. Exp. 8/10/2025_

Description of Identity Card or Document

to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this

_01_ day of _February_ , _2020_
Day        Month        Year

_____
Signature of Notarizing Officer



CARLOS PONCE
Notary ID #129750447
My Commission Expires
March 27, 2022

Place Notary Seal and/or Stamp Above

---

**OPTIONAL**

Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**

Title or Type of Document: _2nd Chance Inc. – Funding Agreement_

Document Date: _____     Number of Pages: _1_

Signer(s) Other Than Named Above: _Omar Shakur & Truman Lehon_

---

©2018 National Notary Association

M1304-16 (09/18)

# 2

## 2ndChance TV Show and Productions Inc.
### San Antonio, Texas, United States
### Phone: 628-333-0520 www.2ndChanceSavesLives.org

# Funding Agreement

Party A: Imran Khan and INDIVIDUAL

Party B: Omar Shakur, CFO/COO of 2nd Chance TV Show and Productions Inc.

Party A agrees to Fund Party B with US$ 20,000.00 (___Twenty Thousand_US Dollars) in exchange Party B will give Party A _20_ shares of the 2nd Chance TV Show worth US$ 10,000.00 (Ten Thousands US Dollars) each.

Party B will buyback all shares from Party A on February 1st 2020 with valuation of +10% (US$11,000.00 per share) or 0.05% of the Net Profits from the 2nd Chance TV Show per share, whichever is greater.

Funding is made in the form of the wire transaction from WELLS FARGO, to CHASE Acct. Number 3821309391 Routing Number <<111000614>> in the amount of US$  20,000.00.

NO TEXT BELOW

---

Omar Shakur
CFO / COO of 2nd Chance TV show and Productions Inc.

Imran Khan
INDIVIDUAL

Paul Natall
CEO of 2nd Chance TV show and Productions Inc.

# EXHIBIT 2



# 2ndChance TV Show and Productions Inc.

**7113 San Pedro Ave #375, San Antonio, TX 78216**
**Phone: 628-333-0520**
www.2ndChanceSavesLives.org

# Promise to Pay

For the Seed Funding and the additional Funds specified on the Appendix A, I, Paul Nutall, CEO of 2ndChance TV Show and Productions Inc. promise to pay Imran Khan the amount of **$1,348,000.00 (One Million Three Hundred Forty Eight Thousand Dollars)** with the first AD revenues or income from other Revenue/Fund Sources, whichever is earlier, with a repayment date no later than **March 1st, 2021** at the latest.

July 30, 2020

_____

Paul Nutall
CEO
2ndChance TV Show and Productions, Inc.

 **2ndChance TV Show and Productions Inc.**
7113 San Pedro Ave #375, San Antonio, TX 78216
**Phone: 628-333-0520**
www.2ndChanceSavesLives.org

# APPENDIX A

Funding Statement from Imran.

February 2020:
    $20,000.00- Seed Funding
    Expected Minimum Payback: Original Investment $20,000.00 + 10x Seed ROI ($200,000.00) + 1% of 1st year Net Profits (about $94,000.00).
    Grand Total: **$314,000.00**

March 2020:
    $10,000.00 – Funds for Due Diligence and Background Fee.

April 2020:
    $30,000.00 – 2nd Funding.
    March and April Funds will be paid with the First Ad Money coming in August.
    $10,000.00 (March) + $30,000.00 (April) + $10,000.00 (one-time bonus)
    Total Payback **$50,000.00**

June 2020:
    $75,000.00 – 3rd Funding.
    3rd Funding will be paid with the First Ad Money coming in August.
    $75,000.00 (June) + $75,000.00 (one-time bonus)
    Total Payback **$150,000.00**

**July 2020:**
    $60,000.00 - 4th Funding.
    4th Funding will be paid with the First Ad Money coming September.
    $60,000.00 (July) + 100,000.00 (one-time bonus)
    Total Payback **$160,000.00**

For Imran's Seed Funding and additional help, 2ndChance will payback about **$674,000.00**, and an additional bonus @ **100%** of total owned of **674,000.00** for a Grand Total of **$1,348,000.00**

Or total net profit @ **7%** of 2ndChance TV Show & Production to be determined.
I.E. net profit $ **9,400,000.00 @ 7% = $ 658,000.00**

**SAMPLE year end net estimated $9,400,000.00**
Imran payback $674,000.00
Year end net profit @ 7%
          $658,000.00
**Total**
    **$1,348,000.00**

# EXHIBIT 3

# 2ndChance TV Show and Productions Inc.

**7113 San Pedro Ave #375, San Antonio, TX 78216**
**Phone: 628-333-0520**
www.2ndChanceSavesLives.org

## PROMISE TO PAY

Loan parameters and criteria's for all 2ndChance Entertainment companies funding initial of first 12 episodes and additional funding specified on the Appendix A (Original) and penalty amount.

## Memorandum of Understanding

### 1. Parties

1.1. 2ndChance T.V. Show & Production Inc. (hereinafter referred to as "2ndCExecutives")

1.2. Imran Khan (hereinafter referred to as "the loan Investor" or "funding investor")

### 2. Purpose

2.1. The purpose of the joint venture is for Executives to acquire, produce, and develop content for the 2ndChance T.V. Show & Production Inc., its platforms, and its affiliates.

2.2. The purpose of this joint venture is to perform business development on the Sinclair Broadcasting television network, its platforms, products, and services. Acquire and package "short series" to fill available time slots that can be packaged into 22.5 minute long blocks of content. The funding investor to receive ROI plus bonus by the 1yr deadline of March 2021.

### 3. Roles and Responsibilities

3.1. 2ndChance T.V. Show & Production Inc. shall be responsible:

3.1.1. To provide the Executives with all required documentation required to perform due diligence, verification, and clearance of the Sinclair Broadcasting television network, its affiliates, certifications, legal authorities, partnerships, contractual agreements, and limitations.

# 2ndChance TV Show and Productions Inc.
### 7113 San Pedro Ave #375, San Antonio, TX 78216
#### Phone: 628-333-0520
www.2ndChanceSavesLives.org

3.1.2. To provide the Funding Investor with non-revocable guarantees ROI and controls of their assigned and agreed timeslots and placements on the television network and its platforms.

3.2. The Executives shall be responsible:

3.2.1. To acquire, produce, and develop content that will be broadcasted on the Sinclair Broadcasting television network and its affiliates. This agreement extends with limitations of any competing television network that the project is deferred.

3.2.2. To develop strategic partnerships and monetization strategies between 2ndChance T.V. Show & Productions Inc. Sinclair Broadcasting Television Network and other stakeholders to increase revenue and further business goals.

## 4. Television Network / Distribution Platform

4.1. Sinclair Broadcasting is a 24/7 digital multicast television network that is available nationwide via television, radio and via internet streaming which allows the network to be accessed anytime, anywhere via any mobile device, laptop, or desktop computer via apps.

## 5. Profit Participation

5.1. 2ndChance T.V. Show & Production Inc. and the Funding Investor agree to **80/20** split at a percentage of a **$5mil. advance** that is comparable to the current industry standard. The funding Investor 80%, the 2ndCExecutives 20%.

## 6. Rights/Credits

6.1. 2ndChance T.V. Show & Production Inc. shall retain all rights to the property. (Exception: shall this agreement become default and arbitrary mandatory 2ndChance T.V. Show & Production Inc. fail to pay back the loan on its due date and/or profit share on its due date; all property rights and 2ndChance guarantors become non-revocable collateral and ownership of funding investor. Funding Investor will proceed with the lien process against contract, guarantors and all parties with a 30 day cure period. 2ndCExecutives pay for all arbitration.

# 2ndChance TV Show and Productions Inc.

**7113 San Pedro Ave #375, San Antonio, TX 78216**
**Phone: 628-333-0520**
www.2ndChanceSavesLives.org

6.2. Omar S.A. Shakur will receive Executive Producer (EP) credits (any variation) of production along with 2ndCExecutives.

## 7. Content Development, Acquisition and Production

7.1. The Executives shall acquire, produce, and develop content of the following:

7.1.1. Feature length film and episodic content that can be aired on both television and internet.

7.1.3. A series of shorts that combined can fill a minimum of one 22.5 minute timeslot.

## 8. Entire Agreement

8.1. All parties agree that the terms specified in this memorandum of Understanding are in pursuit of a final formal agreement to be determined.

January 10, 2021

Paul Nutall
CEO of 2ndChance TV Show and Productions Inc.

Imran Khan
Funding Investor

# EXHIBIT 4



**Morris Law**

June 12, 2021

To:

Paul Nutall, CEO
7113 San Pedro Avenue
#375
San Antonio TX 78216

Via U.S. Mail and Email:

**Matthew L. Morris**
Admitted in California
MMorris@MorrisJustice.com

21550 Oxnard Street, 3rd Floor
Woodland Hills, CA 91367
Tel: (818) 423-9287
Fax: (818) 465-2773

www.MorrisJustice.com

Dear Mr. Nutall,

My office has been retained by Imran Khan as to your breach of contract regarding the Promise to Pay both you and Mr. Khan executed dated January 10, 2021, a copy of which is enclosed for your ease of reference.

The purpose of this joint venture, per Paragraph 2, was for 2nd Chance T.V. Show & Production, Inc. "to acquire, produce, and develop content for the 2nd Chance T.V. Show & Production, Inc., its platforms, and its affiliates." Additionally, the purpose of the joint venture was to "perform business development on the Sinclair Broadcasting television network, its platforms, products, and services. Acquire and package "short series" to fill available time slots that can be packaged into 22.5 minute long blocks of content. The funding investor [Mr. Khan] to receive ROI plus bonus by the 1 yr deadline of March 2021."

As you know, per the enclosed Promise to Pay, 80% of the $5,000,000.00 loan from Mr. Khan was due on or before March 1, 2021, per Paragraph 2.2. Further, per Paragraph 6.1, with the cure period lapsing 30 days later on April 1, 2021. To date, no payment has been received by Mr. Khan and you are currently in default.

You have willfully and deliberately misled my client with conduct specifically aimed at hiding your failure to pay as promised. Your Promise to Pay has been breached and as a consequence of your failure to pay, Mr. Khan's has incurred incidental and consequential damages. These damages will be accessed and added to his legal claim should you not immediately act on this formal demand.

Due to your unlawful conduct resulting in your breach of contract, Mr. Khan hereby makes his final demand in the amount of $4,000,000

on or before June 11, 2021.  Please make payment to The Morris Law Practice, Inc., into the IOLTA Wire instructions are as follows:

Wells Fargo Bank:
18801 Ventura Blvd., Ste. 101
Tarzana, CA 91356

Wire Routing Number:        121000248
Swift Code:                 WFBIUS6S.

Should you not comply with this demand and receive a payment in the amount of $4,000,000 on or no later than Friday, June 18, 2021, my client is prepared to move forward to seek all legal options in collecting this balance, including, but not limited to, outside collection activity and any and all judicial intervention that is deemed necessary to satisfy the outstanding balance. To that end, please note that Mr. Khan will be seeking reimbursement for any and all fees associated with the collection of the unpaid balance, including, but not limited to, reasonable attorney fees.  As such, we strongly encourage you to contact our office to discuss upon receipt of this letter.

Sincerely,

Matthew L. Morris, Esq.

In agreement thereto and at the direction of Imran Khan

_____
Imran Khan

MM:aa
c: Imran Khan

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | Hello |
| **FILE NAME** | 1623528383-2021.06.12s_Demand_Letter.pdf |
| **DOCUMENT ID** | 624eb7c8c49ea8d90fe2a05bdeae6af7aae1239a |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

This document was requested on themorrislawpractice.cliogrow.com and signed on themorrislawpractice.cliogrow.com

## Document History

**SENT**
**06 / 12 / 2021**
20:06:51 UTC
Sent for signature to Imran Khan (ikonic.boss@gmail.com)
from mmorris@morrisjustice.com
IP: 72.219.81.66

**VIEWED**
**06 / 13 / 2021**
01:50:34 UTC
Viewed by Imran Khan (ikonic.boss@gmail.com)
IP: 172.56.31.228

**SIGNED**
**06 / 14 / 2021**
08:55:24 UTC
Signed by Imran Khan (ikonic.boss@gmail.com)
IP: 198.72.233.113

**COMPLETED**
**06 / 14 / 2021**
08:55:24 UTC
The document has been completed.